UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RAICHELL RICHARDSON,          )<br>      Plaintiff,                   )<br>                                     )<br>     v.                                )  CAUSE NO.: 2:14-CV-92-PRC<br>                                     )<br>THE LUTHERAN UNIVERSITY     )<br>ASSOCIATION d/b/a VALPARAISO )<br>UNIVERSITY,                        )<br>      Defendant.                 )| |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment [DE 26], filed by Defendant The Lutheran University Association d/b/a Valparaiso University on June 5, 2015. For the reasons set forth below, the Court grants the motion.

**PROCEDURAL BACKGROUND**

On March 25, 2014, Plaintiff Raichell Richardson filed a civil rights complaint against Defendant The Lutheran University Association d/b/a Valparaiso University ("the University"), alleging that the University violated her rights under Title VI of the Civil Rights Act of 1964, as set forth at 42 U.S.C. § 2000d *et seq*. Richardson also brings a claim of unjust enrichment. The University filed an Answer on May 9, 2014.

On June 5, 2015, the University filed the instant Defendant's Motion for Summary Judgment. The University filed a brief in support of the Motion and filed designated evidence on June 25, 2015. Richardson filed a response and designated evidence on July 6, 2015, and an additional exhibit on July 9, 2015. The University filed a reply on July 20, 2015.

The parties orally agreed on the record to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof

at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

**MATERIAL FACTS**

Richardson, who is African American, enrolled in the University's College of Nursing in Spring 2010. At the time of her enrollment, Richardson was aware of the University's and the College of Nursing's minimum academic standards. These standards are (1) a minimum cumulative grade point average (GPA) of 2.5, (2) a minimum GPA in required nursing courses of 2.5, and (3) no grade below a C in certain courses in the nursing curriculum.

The University placed Richardson on academic probation after the Spring 2011 semester because she earned a D+ in N210—one of the classes in which nursing students must earn a C or higher—and because her cumulative nursing GPA dropped below 2.5. Dean of the College of Nursing Janet Brown sent Richardson a letter notifying her of the infractions and of her academic probation. The letter warned Richardson that if, after raising her nursing GPA to 2.5, either her cumulative or nursing GPA fell below 2.5, she would be dismissed from the College of Nursing. Richardson raised her GPA above 2.5 the following semester. After the Spring 2013 semester grades were calculated, Richardson's nursing GPA again dropped below 2.5, and she was dismissed from the College of Nursing. Richardson appealed her dismissal in June 2013.

Student appeals following dismissal from the College of Nursing are heard by an appeals committee. The committee makes a recommendation regarding the appeal, and Dean Brown has the final authority to accept or reject the recommendation.

Dean Brown testified that it is the policy to inform students who are appealing dismissals that they should have a corrective plan to present to the appeals committee. In her sworn declaration, Richardson states that she was not told of the need to present a corrective plan.

Richardson's appeal process is known as an "appeal of dismissal and, if successful, would have reinstated her to the College of Nursing with all of her previously earned credits. At the time of her appeal, Richardson's GPA reflected her grade of B- in N210, which she earned upon retaking the class, not her original grade of D+. The appeals committee that heard Richardson's appeal inquired into Richardson's grades to determine if there was a class with a particularly low grade. At the time of her appeal, there was no grade below a C on Richardson's transcript that affected her cumulative or nursing GPA. The appeals committee determined that Richardson was unable to articulate a clear plan to improve her academic performance, did not show that stressors had subsided or that she had a plan to handle the stressors differently, and had a demonstrated record of academic underperformance. As a result, the committee decided to recommend that Richardson not be reinstated, and Dean Brown accepted this recommendation.

Student 1, who is not African American, was dismissed from the College of Nursing early in his nursing studies. After dismissal, he was able to eventually graduate from the College through the "readmission appeal" process. A readmission appeal, if successful, requires the student to retake all prerequisites in which unsatisfactory grades were earned and then complete all of the nursing requirements—regardless of whether he or she had previously received a satisfactory grade in any

5

nursing course. In short, Student 1's successful appeal permitted him to begin the nursing program anew; it did not reinstate him. None of the members of his appeals committee were also on Richardson's appeals committee.

Student 2, who is not African American, went before the appeals committee in August 2011. Her nursing GPA fell under the 2.5 threshold after the Summer I semester grades were released, and, though her GPA improved after Summer II grades, it did not rise to 2.5 or higher. Although the appeals committee, which shared no members in common with Richardson's committee, recommended denying Student 2's appeal, Dean Brown did not accept the committee's recommendation and granted Student 2's appeal. This is the only time that Dean Brown recalls not accepting the recommendation of the appeals committee. Dean Brown's reasons for granting the appeal were Student 2's dramatic improvement, namely GPA improvement, the extensive plan of study she provided evidence of, and the indication that she would quit her job to focus on her education.

Student 3, who is not African American, appealed her dismissal in January 2013. She was initially warned of dismissal in December 2011 when her nursing GPA was 2.393 and she received a D+ in N415. She was required to raise her GPA with the next nursing course she took and was warned that if she earned another grade below a C in a nursing course or if her cumulative or nursing GPA fell below 2.5 again she would be dismissed from the program. In May 2012, it was noted that Student 3's nursing GPA had improved to 2.42, and she received a continued warning of dismissal. She was required to raise her nursing GPA above 2.5 by Fall 2012. In December 2012, Student 3 was dismissed from the College of Nursing. Her nursing GPA had not risen to 2.5 and her cumulative GPA had dropped below 2.5. In January 2013, Student 3's appeal was successful, and

she was reinstated to the College of Nursing. The appeals committee, which shared no members with Richardson's appeals committee, supported Student 3's appeal because she articulated a study plan using study groups and resources to improve her academic performance and explained to the committee's satisfaction that major stressors had been resolved and, additionally, because the committee felt she should be given the opportunity to repeat N415, because the D+ was significantly weighing down her GPA.

## ANALYSIS

Richardson claims that the University engaged in racial discrimination in violation of Title VI of the Civil Rights Act of 1964. Richardson also claims that the University has been unjustly enriched by payments made to the University toward Richardson's tuition. The University seeks summary judgment on both claims in Richardson's Complaint. First, the University argues that the Title VI claim in Count I cannot survive because Richardson cannot demonstrate that the University's denial of Richardson's appeal is a result of racial discrimination. As for the claim of unjust enrichment in Count II, the University contends that Richardson has received the benefit of all moneys paid to the University on her behalf.

### A. Title VI Discrimination

Title VI mandates that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Because the University receives federal money, it is subject to Title VI. *Id.* In order to avoid summary judgment, Richardson must present evidence sufficient to permit a reasonable jury to

7

conclude that her dismissal from the College of Nursing was due to her race. *Brewer v. Bd. of Trs. of Univ. of Illinois*, 479 F.3d 908, 921 (7th Cir. 2007).

In its motion, the University requests summary judgment on Richardson's Title VI discrimination claim, arguing that Richardson cannot prove discrimination using either the direct or indirect methods of proof. Richardson does not dispute the University's argument that Richardson cannot prove discrimination using the direct method of proof, but she does argue that she should be permitted to proceed to a jury trial using the indirect method.

The burden-shifting, indirect method of proving discrimination established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), applies to claims brought under Title VI. *Brewer*, 479 F.3d at 915 (citing *Paul v. Theda Medical Ctr., Inc.*, 465 F.3d 790, 794 (7th Cir. 2006); *Fuller v. Rayburn*, 161 F.3d 516, 518 (8th Cir. 1998)). The burden is first on Richardson to establish a prima facie case of discrimination. *Id.* The burden then shifts to the University to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* Finally, the burden shifts back to Richardson to demonstrate that the reason given is mere pretext for discrimination. *Id.*

*1.    The Prima Facie Case*

In the Title VI education context, the four elements of the prima facie case are: (1) the plaintiff is a member of a protected class, (2) the plaintiff was meeting the school's legitimate educational expectations, (3) the school took an adverse education action against the plaintiff, and (4) the plaintiff received worse treatment than that of a similarly situated student not in the protected class. *Id.* at 921 (citing *Byrant v. Indep. Sch. Dist. No. I-38*, 334 F.3d 928, 930 (10th Cir. 2003); *Hankins v. Temple Univ. (Health Sciences Ctr.)*, 829 F.2d 437, 440-43 (3d Cir. 1987)).

8

The University concedes that Richardson meets elements one and three of the prima facie case but argues that Richardson's claim fails to meet elements two and four. When a plaintiff is not meeting legitimate expectations but receives worse treatment than those not in the protected class who have similar shortcomings, elements two and four of the prima facie case merge. *Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011). Richardson's academic performance fell below the University's standards, but Richardson claims that she received worse treatment than those of other races who also failed to meet those standards. Consequently, elements two and four merge, and Richardson can establish a prima facie case if she can present a comparator, that is, a similarly situated student of another race who received more lenient treatment.

While it is true that a comparator need not be a plaintiff's clone, a comparator must be substantially similar to the plaintiff. *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 916 (7th Cir. 2010). "The similarly situated analysis requires a context-based examination of all relevant factors." *Eaton v. Ind. Dept. of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011). A comparator must have enough in common with a plaintiff such that meaningful comparison between the two is possible and that the similarities "permit a reasonable juror to infer, in light of all the circumstances, that an impermissible animus motivated the employer's decision." *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012).

In the context of an academic dismissal under Title VI, key similarities include attending the school at the same time, being subject to the same academic standards, having the same decisionmaker regarding dismissal decisions, and having similar academic records without differentiating or mitigating circumstances that would distinguish the disparate treatment the students received. *See Geagan v. City Univ. of New York*, 09 Civ. 3271, 2011 WL 3370395, at *14

9

(S.D.N.Y. July 14, 2011); *see also Coleman*, 667 F.3d at 847 (listing analogous factors in the employment discrimination context); *Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 833 (7th Cir. 2012) (suggesting academic performance and student conduct are relevant factors in determining if students are comparable). Richardson identifies three possible comparators: Students 1, 2, and 3.

Student 1's appeal process was not the same as Richardson's appeal process. Whereas Richardson's "appeal of dismissal," if successful, would have reinstated her in the College of Nursing with all of her previously-earned grades and credits, Student 1's successful "readmission appeal" required him to begin the program anew, retaking all previously completed nursing courses and all unsatisfactory prerequisites. Because Student 1 and Richardson engaged in different appeal processes and sought dissimilar relief, Student 1 is not an appropriate comparator.

Richardson has provided no evidence, other than deposition testimony of Dean Brown, regarding Student 2's dismissal. Student 2 appealed dismissal in August 2011. Dean Brown, for the only known time in her tenure as dean, went against the appeals committee recommendation and reinstated Student 2. The Court does not know Student 2's cumulative or nursing GPA at the time of her warning or dismissal, other than that her nursing GPA was under 2.5 and had improved over the course of the Summer II semester but had not risen to 2.5 or higher. The Court does not know the number of nursing classes she had completed because, although the University asserts that Student 2 was "early in her career," no evidence establishes this. The Court has been provided with no evidence showing that Student 2's appeal was an "appeal of dismissal," like Richardson's, and not a "readmission appeal." The University notes that Richardson neither deposed Student 2 nor sought her academic records in discovery. With so little evidence presented about Student 2, the

similarities and differences between Richardson and Student 2 cannot be gauged, and no reasonable juror could find them to be similarly situated. Student 2 cannot serve as Richardson's comparator.

Richardson argues that Student 3's grades are "strikingly similar" to her own grades. One of the similarities is that both students repeated a class in which she first earned a D+. However, when the appeals committee was considering Student 3's appeal in January 2013, the class in which she received a D+ had not yet been repeated. The committee, which had no common members with Richardson's committee, identified this low grade as a reason to support the appeal, noting that Student 3 should have an opportunity to retake the class. When Richardson went before her appeals committee, she had no such outlier grade because she had already retaken the class in which she had earned a D+, and her GPA at the time of her appeal reflected the grade she earned upon retaking the class, a B-. Further, Richardson's appeals committee similarly checked her transcript for any outlying, low grades. Thus, differences between Richardson and Student 3 are the facts that Student 3 appeared before a different appeals committee with wholly different members in a different semester and had an outlier grade.

However, in viewing the facts in the light most favorable to Richardson, Student 3 and Richardson share the same decisionmaker: Dean Brown, who has the final authority to accept or reject the recommendation of the appeals committee. *See Coleman*, 667 F.3d at 848. Further, though the University points to Student 3's corrective plan and Richardson's inadequate articulation of a plan to differentiate the two, Richardson's declaration states that she was never told to prepare a corrective plan, which is counter to the College of Nursing policy to communicate this to students pursuing an appeal. Richardson was not told to present a corrective plan to the appeals committee.

11

As a result, the differences in corrective plans cannot be used to show that Richardson and Student 3 are not substantially similar for the purpose of this summary judgment motion.

The Court notes that Richardson asserts that Student 3's "continued warning of dismissal,"—that is, the additional semester she was given to raise her GPA above the 2.5 threshold after it fell below 2.5 for the first time—creates a material fact in dispute because of the College of Nursing's policy to dismiss a student after the second infraction. However, Richardson raised her GPA above 2.5 the semester following her initial warning while Student 3's GPA was still under 2.5 the semester after her warning. Richardson had no need for a continued warning because her GPA was above the required minimum. Whether the College of Nursing has a practice of granting a second semester for a student to raise a GPA above the threshold is not material to this case.

Richardson has not identified a reinstated student who appealed the same semester she did or who had even one appeals committee member in common with Richardson. Richardson was not seeking a readmission appeal like Student 1 and there is an evidentiary deficit regarding Student 2. No reasonable juror could find Students 1 or 2 to be Richardson's comparators. However, a reasonable juror could decide that Student 3 is an appropriate comparator because she and Richardson have a common decisionmaker, appealed only one semester apart, and have academic records that share similarities. The analysis must proceed to the next step of the burden-shifting framework.

*2.  Legitimate, Non-Discriminatory Reasons*

The University must articulate a legitimate, nondiscriminatory reason for its denial of Richardson's appeal. The reason the University offers is that Richardson failed to meet the University's standards and her dialog with the appeals committee did not reveal an adequate

corrective plan. As articulated, these reasons are lawful and nondiscriminatory, so the burden accordingly shifts back to Richardson to show that these reasons are only pretext for discrimination. *Grigsby v. LaHood*, 628 F.3d 354, 359 (7th Cir. 2010).

*3.     Pretext*

Richardson can show pretext by identifying weaknesses, implausibilities, inconsistencies, or contradictions in the University's stated reasons that would allow a reasonable person to find the reasons to be unworthy of credence. *Coleman*, 667 F.3d at 852.

In *Coleman*, the plaintiff, whose employment was terminated after she admitted homicidal ideations to her therapist, presented evidence that raised the issue of whether she had actually violated her employer's rules and whether her employer could have honestly believed her to be dangerous. *Id.* at 855-57. She also presented comparator evidence of other employees that had violated the rule and received more lenient treatment. *Id.* at 857. The United States Court of Appeals for the Seventh Circuit held that the plaintiff had presented enough evidence to defeat summary judgment. *Id.* at 859.

Inconsistent application of a rule can serve as evidence of pretext. *Coleman*, 667 F.3d at 857-58. However, looking at the evidence of record, each of Richardson's and Student 3's appeals committees looked to the same criteria in the appeals, namely each student's academic record and corrective plan. Richardson's and Student 3's transcripts were analyzed for outlying low grades that could be retaken to raise the GPA, and each appeals committee evaluated the corrective plan given, including any proposed changes to study habits and resolution to major stressors. Unlike the plaintiff in *Coleman*, Richardson has not attacked the honesty of the appeals committee's assessment through evidence of record.

13

Furthermore, the criteria the University uses to evaluate student appeals is logical. In determining whether a student on the cusp of meeting academic standards should be permitted to continue his or her education, that student's historical academic performance and plans to achieve future academic success are relevant. It is not illogical or inconsistent to consider these factors. Richardson asserts that Student 3's D+ should not have qualified as an "exceptional circumstance" that warranted reinstatement. Regardless of the degree of exceptionality, however, the appeals committee applied this factor evenly, and it makes logical sense in the context of determining appeals of academic dismissals.

Richardson insists there is an inconsistency in her academic record's characterization as "underperformance" while Student 3's academic record was not so characterized. However, Exhibits 15 and 21, which address these matters, were completed by different people, each being a member of that student's appeals committee. Further, there is no statement that Student 3's academic record was considered to be at an adequate performance level. There is no direct inconsistency here regarding Student 3's performance, only silence.

Finally, the record reveals that Dean Brown believes she gave Richardson information about presenting a corrective plan to the appeals committee. Richardson cites Dean Brown's testimony that all students are told about preparing corrective plans as being in conflict with Richardson's testimony that she did not receive this information. That is, Richardson acknowledges that Dean Brown believes that she gave Richardson this information. Richardson has offered no evidence that a discriminatory motive caused her to not be told about corrective plans. Assuming Richardson was not told about the need for a corrective plan, the evidence of record indicates that this was a mistake or oversight, not an action arising out of discriminatory intent. "The question is not whether the

14

[University's] stated reason was inaccurate or unfair, but whether the [University] honestly believed the reasons it has offered to explain the [dismissal]." *Coleman*, 667 F.3d at 852. "The pretext inquiry focuses on the honesty—not the accuracy—of the . . . stated reason." *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1130 (7th Cir. 1997).

Perhaps Richardson would have been able, with proper notice, to present a satisfactory corrective plan to the appeals committee. However, the lack of notice is not enough to show that the University's reasons for not granting Richarsdon's appeal are pretext for discriminatory animus. The appeals committees, though they had no members in common, looked to the same factors in determining both Richardson's and Student 3's appeals, and those factors led to different results because Student 3 had a satisfactory corrective plan and an outlying D+ and Richardson had neither. There is no weakness, implausibility, inconsistency, or contradiction in the University's reasons for denying Richardson's appeal that could lead a reasonable juror to find the reasons unworthy of credence. Richardson has not shown that the legitimate, non-discriminatory reasons articulated by the University are pretext, so this claim cannot survive the University's motion for summary judgment.

## B. Unjust Enrichment

In its motion, the University also requests summary judgment on Richardson's unjust enrichment claim because Richardson received the benefit for all monies paid to the University. A student pays money to the University in exchange for the opportunity to earn credits in courses through satisfactory academic performance, and Richardson received this opportunity. In her response, Richardson presents no reason, other than the pendency of the Title VI claim, why the

unjust enrichment claim should survive. With the Title VI claim resolved in the University's favor, the unjust enrichment claim fails.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment [DE 26], granting summary judgment in favor of Defendant on all of Plaintiff's claims in the Complaint.

The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Defendant and against Plaintiff.

So ORDERED this 26th day of October, 2015.

                                            s/ Paul R. Cherry
                                            MAGISTRATE JUDGE PAUL R. CHERRY
                                            UNITED STATES DISTRICT COURT